# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

W.D. Office Park, LLC,

                Plaintiff,         Case No. 1:18-cv-03146

v.                                 Michael L. Brown
                                        United States District Judge

Brink's, Incorporated,

                Defendant.

_____/

## OPINION & ORDER

Plaintiff W.D. Office Park, LLC, sued to enforce a lease agreement it allegedly entered into with Defendant Brink's, Incorporated. Defendant moved to dismiss, arguing no enforceable contract exists. (Dkt. 12.) Accepting Plaintiff's allegations as true, the Court denies Defendant's motion to dismiss.

## I. Background

Plaintiff is the landlord for a commercial property in Norcross, Georgia. (Dkt. 5 ¶ 8.) In May and July 2017, Defendant signed letters of intent setting forth the terms under which it sought to rent the property. (*Id*. ¶¶ 9–15.) The parties, however, continued to negotiate final terms.

(*Id.* ¶ 16.) Plaintiff emailed Defendant an unsigned, proposed lease agreement. (*Id.* ¶ 17.) It reflected specific changes arising from the parties' prior negotiations. (*Id.* ¶ 16; Dkt. 5-3.)

Without objection, Defendant signed the lease and emailed it back to Plaintiff. (Dkt. 5 ¶ 20.) Three days later, Plaintiff acknowledged receipt of the executed lease. (*Id.* ¶ 22.) Plaintiff countersigned the lease on February 1, 2018, but did not send Defendant a copy. (*Id.* ¶ 25.) Defendant sent Plaintiff a check dated February 5th for the first month's rent and a security deposit. (*Id.* ¶¶ 27–28.) Defendant, however, apparently changed its mind about executing the agreement. It notified Plaintiff on February 5th that it was rescinding its offer to lease the property. (*Id.* ¶ 30; Dkt. 5-6 at 2; Dkt. 15 at 5.) Plaintiff rejected the rescission and told Defendant it had to honor the lease. (Dkt. 5 ¶¶ 32–33, 37, 39–40.)

When Defendant failed to pay rent, Plaintiff sued Defendant in state court for breach of contract. (Dkt. 1-1.) Defendant removed the case to this Court. (Dkt. 1 ¶ 11.) Defendant moved to dismiss, claiming the parties never had an enforceable contract. (Dkt. 4.) Rather than responding, Plaintiff properly filed an amended complaint, changing its

allegations about how the parties entered into an enforceable lease. (Dkt. 5.) Defendant renewed its motion to dismiss, arguing the parties never had an enforceable contract because Plaintiff failed to provide Defendant an executed copy of the lease. (Dkt. 12-1 at 5.) So Defendant claims it had the right to revoke its offer to lease the property. (*Id.* at 3.)

## II. Standard of Review

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Even so, a complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Put another way, a plaintiff must plead "factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This so-called "plausibility standard" is not a probability requirement. But the plaintiff must allege enough facts so that it is reasonable to expect that discovery will lead to evidence supporting the claim. *Id.*

Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556; *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) ("[N]otice pleading does not require a plaintiff to specifically plead every element of his cause of action, [but] a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." (internal quotation marks omitted)).

Finally, on a 12(b)(6) motion to dismiss, a court is generally limited to considering only the four corners of the complaint. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). An important exception to the rule applies here, however. The court may

consider extrinsic documents if (1) they are central to the plaintiff's claim, and (2) the parties have not challenged their authenticity. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, the lease agreement and the letters of intent are central to Plaintiff's claim and Defendant does not challenge the documents' authenticity. In fact, Defendant relies on the same documents in its argument as well. (Dkt. 12-1 at 14–15.) The Court thus may consider the lease agreement and the other attached undisputed documents without converting the motion into a motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

### III. Discussion

To make an enforceable contract, Georgia law requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." GA. CODE ANN. § 13-3-1. Mutual assent entails proof of valid offer and acceptance. § 13-3-2. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Caley v. Gulfstream Aerospace Corp.*, 428

F.3d 1359, 1373 (11th Cir. 2005) (internal quotation marks omitted). Without a Statute of Frauds issue,[1] offer and acceptance need not be in writing. *Bedsole v. Action Outdoor Advert. JV, LLC.*, 750 S.E.2d 445, 450 (Ga. Ct. App. 2013). Instead, a court may look to the circumstances surrounding contract formation to determine evidence of mutual assent. *Id.*

Defendant correctly recognized that Plaintiff's amended complaint asserts a new theory of contract formation from its original complaint. (Dkt. 12-1 at 4.) Plaintiff no longer argues Defendant made an offer to enter a lease by signing the lease and Plaintiff accepted Defendant's offer by countersigning it. (Dkt. 1-1 ¶ 15.) Plaintiff abandoned that theory, presumedly in response to Defendant's correct argument that under Georgia law a party cannot accept a bilateral contract without communication of acceptance. *See Gainesville Glass Co. v. Don*

---

[1] Defendant mentions the Statute of Frauds in its reply brief. (Dkt. 16 at 11–12.) Georgia statute requires "[a]ny agreement that is not to be performed within one year from the making thereof . . . [to] be in writing and signed by the party to be charged therewith. . . ." GA. CODE ANN. § 13-5-30. Based on the pleadings, the lease agreement complies with the Statute of Frauds because, assuming all facts in the light most favorable to Plaintiff, both parties did sign the lease, and Defendant ("the party to be charged with") clearly signed the agreement. The Statute of Frauds therefore does not require dismissal of the complaint.

6

*Hammond, Inc.*, 278 S.E.2d 182, 183–84 (Ga. Ct. App. 1981) (citing *Hartford Fire Ins. Co. v. Steenhuis*, 155 S.E.2d 690, 692 (Ga. Ct. App. 1967)).  Plaintiff now alleges that its delivery of the unsigned lease constituted an offer to enter into the lease, and Defendant accepted the offer by signing it.  (Dkt. 5 ¶¶ 17–21.)

Defendant argues this theory fails as a matter of law because the lease and the parties' negotiations show they intended for the lease to be enforceable only upon a fully executed agreement, including delivery back to Defendant.  (Dkt. 12-1 at 7.)  Defendant argues that, under Georgia law, the "mere private uncommunicated assent" to a contract is ineffective.  (*Id.*)  But that is not what Plaintiff alleges.  It alleges it provided its manifestation of willingness to enter into a bargain when its broker sent Defendant the lease.  (Dkt. 5 ¶¶ 17–20).  It further alleges that Defendant's execution of the lease "evidences a meeting of the minds as to all the terms of the contract and a present agreement to lease." (*Id.* ¶ 21.)  So Plaintiff claims this created a contract.

Defendant also contends Plaintiff's theory fails as matter of law because Plaintiff admits it did not sign the lease before its broker sent it out.  (Dkt. 12-1 at 10.)  Defendant claims that, under Georgia law, a

7

landlord's presentation of an unsigned lease to a prospective tenant constitutes an invitation for the prospective tenant to make an offer to lease the property. (*Id.*) In support of this argument, Defendant cites *Hayes v. City of Atlanta*, 57 S.E. 1087 (Ga. Ct. App. 1907). (Dkt. 12-1 at 12.) But in that case, the broker who offered the lease on behalf of the landlord had no authority to bind the landlord. 57 S.E. at 1088. Nor was there any evidence that the landlord and the tenant had spent months negotiating the lease to arrive at a mutually agreed upon set of terms before the broker distributed the lease to both the landlord and the tenant. *See id.* at 1087. This case here instead involves such negotiations, which may have included the manner by which the parties would execute and exchange the lease.

Defendant also cites *Lewis v. Floyd*, 191 S.E.2d 291 (Ga. Ct. App. 1972). (Dkt. 12-1 at 11 n.46.) That case also did not involve thorough negotiations like the negotiations at issue. Indeed, the parties in *Lewis* disputed the alleged agreement's terms, further suggesting that a lease signed by one party was merely an offer. 191 S.E.2d at 292–93; *see Doll v. Grand Union Co.*, 925 F.2d 1363, 1368–69 (11th Cir. 1991) ("Every possible provision of a contemplated lease may be discussed and agreed

8

upon. . . . When the parties express their intention to be bound and they specify the basic terms of the lease, the courts will enforce the contract, and thus the lease, to avoid frustrating the parties' original intent.").

Finally, Defendant claims "the parties agreed that the lease would not become effective until both sides executed it (*i.e.*, signed and delivered it)." (Dkt. 12-1 at 12.) Neither the lease nor the preceding letters of intent require delivery of the signed document as Defendant suggests. They merely require execution. The letters of intent state that the lease was "non-binding upon both parties until such time as a Lease agreement has been fully executed." (Dkts. 5-1 at 3; 5-2 at 3.) Similarly, the lease agreement states that the parties can execute it "in two or more counterparts." (Dkt. 5-4 at 12.) It also states that each counterpart "shall be effective if it bears the signatures of all parties hereto; or so many counterparts shall contain all of the signatures of the parties hereto shall constitute one Lease, and shall be effective as such." (*Id.*)

Defendant argues that the Georgia Supreme Court's decision in *20/20 Vision Center, Inc. v. Hudgens*, 345 S.E.2d 330 (Ga. 1986), controls the outcome here. (Dkt. 12-1 at 15.) Defendant claims that the Georgia Supreme Court held that "where a proposed lease indicates on its face

that it is ineffective until both sides execute it, the signature of just one party is insufficient to create a binding contract." (*Id.* at 15–16.) But that case involved nowhere near similar facts. The Georgia Supreme Court found that there were many reasons the return of the lease did not create a binding contract, including because the putative landlord intentionally failed to sign the lease before sending it to the putative tenant so that the landlord could avoid being bound by the agreement. 345 S.E.2d at 333. No such evidence exists here — at least not yet.[2]

In determining whether parties had the mutual assent or meeting of the minds necessary to agree, Georgia law applies an objective theory of intent by which one party's intention has the meaning "a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of

---

[2] Defendant's argument based on unsigned signature blocks is also unavailing at this point in the litigation. Georgia caselaw permits enforcing a contract despite an unsigned signature block. *Cobra Tactical, Inc. v. Payment All. Int'l, Inc.*, 315 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) ("[T]he mere fact that a contract contains signature blocks does not mean that signature is required to make the contract effective. . . . Signatures are only required when the contract itself explicitly requires them to be effective.").

assent." *Legg v. Stovall Tire & Marine, Inc.,* 538 S.E.2d 489, 491 (Ga. Ct. App. 2000) (citing *Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 297 S.E.2d 733, 737 (Ga. 1982)). In deciding whether parties mutually assented to the terms of a contract, a court may consider the circumstances surrounding making the contract, including the parties' discussions and correspondence. *Frickey v. Jones*, 630 S.E.2d 374, 376 (Ga. 2006) ("The circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.").

This case involves more than six months of negotiations and the involvement of a broker who went back and forth between Plaintiff and Defendant. It involves correspondence from the broker about how the parties should finalize their agreement. Perhaps discovery will show that the parties did not intend to operate in the manner Plaintiff alleges in its amended complaint. It may be, for example, that the broker would say that he expected each party to enunciate its assent by signing their counterpart of the lease and returning it to him. After all, he seemed to think Defendant would return a signed copy that he could give to

11

Plaintiff. (Dkt. 5-3 at 1.) And Defendant expected to receive an executed copy in return. (Dkt. 12-2 at 2.) The Court, however, cannot consider any such facts, as they are neither included in the amended complaint nor part of the contract (or other extrinsic documents properly before the Court).

Plaintiff's theory of the case is its second argument — and may be a position taken in desperation. In deciding this motion to dismiss, the Court still makes all reasonable and positive inferences in Plaintiff's favor. *Bryant*, 187 F.3d at 1273 n.1. Plaintiff claims it intended to make an offer through its delivery of the execution copy of the lease. (Dkts. 5 ¶ 19; 15 at 4.) Plaintiff presented a lease agreement reflecting months of negotiations between the parties and Defendant signed the proposed lease without making any changes. (Dkt. 5 ¶¶ 16–17, 20–21.) Accepting these allegations as true, the Court finds Plaintiff has alleged a valid contract.

IV. **Conclusion**

The Court **DENIES** Defendant Brink's, Incorporated's Motion to Dismiss for Failure to State a Claim (Dkt. 12). The Court, however, recognizes the "wonky" nature of this case, including Plaintiff's shifting

theories, the unsigned witness block, and Defendant's and the broker's apparent belief that Plaintiff would return an executed lease. While insufficient to preclude Plaintiff's allegations at this point, the Court recognizes these irregularities may have greater significance after discovery. This case may look differently. The Court thus invites either party to propose a bifurcated and accelerated discovery plan focused on the execution of the lease so that Defendant might file an early motion for summary judgment before the parties incur the costs of potentially unnecessary discovery.

**SO ORDERED** this 22nd day of August, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE