## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

W.D. Office Park, LLC,

                Plaintiff,

                            Case No. 1:18-cv-3146-MLB

v.

Brink's Incorporated,

                Defendant.

_____/

## OPINION & ORDER

    Plaintiff W.D. Office Park, LLC, filed suit against Defendant Brink's Incorporated for breach of contract. (Dkt. 5 at 7.) Defendant moves for summary judgment. (Dkt. 43.) The Court denies that motion.

## I.   Background

    In March 2017, Defendant sent Plaintiff's broker a Request for Proposal ("RFP") relating to a potential lease of a property in Norcross, Georgia. (Dkts. 43-44 ¶ 1; 49-1 ¶ 1.) The RFP provided it was "non-binding upon both parties until such time as a [l]ease agreement has been fully executed." (Dkts. 43-44 ¶ 2; 49-1 ¶ 2.) Plaintiff responded to the RFP with a few proposals, additions, and deletions, but Plaintiff

did not change that provision.  (Dkts. 43-44 ¶ 3; 49-1 ¶ 3.)  In April 2017,

Plaintiff's broker sent Defendant's broker a letter of intent ("LOI")

providing the "terms and conditions under which [Plaintiff] would enter

into a lease agreement with [Defendant]."  (Dkts. 43-44 ¶¶ 4–5; 49-1

¶¶ 4–5.)  The LOI contained a section called "Conditions," in which

Plaintiff's broker agreed that the proposal was "subject to the execution

of a [l]ease agreement by both parties" and would be "non-binding upon

both parties until such time as a [l]ease agreement has been fully

executed." (Dkts. 43-44 ¶ 6; 49-1 ¶ 6.)  Plaintiff and Defendant (through

their respective brokers) exchanged several additional LOIs during their

negotiations.  (Dkts. 43-44 ¶ 8; 49-1 ¶ 8.)  Each LOI set forth the same

conditions:

> This proposal is subject to the execution of a [l]ease agreement
> by both parties and is non-binding upon both parties until
> such time as a [l]ease agreement has been fully executed.
>
> This proposal is intended to provide an outline of the terms
> under which Landlord is willing to enter into a formal lease
> agreement with [Defendant].  Nothing contained herein shall
> be binding on either party until such time an actual lease
> agreement is fully executed by all parties.

(Dkts. 43-44 ¶ 8(a)–(b); 49-1 ¶ 8(a)–(b).)

On January 3, 2018, Plaintiff's broker sent a draft of the lease to Defendant's broker. (Dkts. 43-19 at 2; 43-44 ¶ 22; 49-1 ¶ 22.) On January 19, Defendant executed the lease, which contains a merger clause, and sent it to Plaintiff with a cover letter that stated, "Upon execution, please be sure to" email and return "a copy of the fully executed original." (Dkts. 43-23 at 2, 5; 49-2 ¶ 10; 51 ¶ 10.)   On January 22, Plaintiff's broker notified Defendant's broker that Defendant's executed copy of the lease was received and asked when Plaintiff would receive a rent check and security deposit. (Dkts. 43-25 at 3; 43-44 ¶ 28; 49-1 ¶ 28.) By January 30, Plaintiff had not received the check, and Plaintiff had not signed the lease. (Dkts. 43-27 at 2; 43-44 ¶ 29; 49-1 ¶ 29.) On February 1, Plaintiff's broker emailed Defendant's broker, stating "I've just been made aware we've got some other cleaning up to do." (Dkts. 43-29 at 2; 43-44 ¶ 30; 49-1 ¶ 30.) That same day, Plaintiff's Brian Gomez[1] dated the lease that Defendant executed and left it on the desk of Plaintiff's owner, Pablo Diego, for his signature. (Dkts. 43-40 ¶ 3; 49-11 ¶¶ 3–4.)

---

[1] Mr. Gomez is the Vice President of Commercial Development of The Management Group, LLC, which is the contracted property management company for Plaintiff. (Dkt. 49-11 ¶ 1.)

3

On February 2, Defendant's broker emailed Plaintiff's broker a picture of a sinkhole on the premises, saying Defendant "has some major concerns about the building." (Dkts. 49-2 ¶ 16; 51 ¶ 16.)  On February 5, Defendant sent Plaintiff a letter, dated February 2, by email and mail, providing: "This letter hereby constitutes effective notice of the Rescission of [Defendant's] offer to lease the Premises under that certain proposed lease being negotiated between Landlord and [Defendant].  The Rescission is effective as of the date first written above, and shall be binding upon the parties." (Dkts. 43-34 at 2, 6; 43-44 ¶ 32; 49-1 ¶ 32.) That same day, Plaintiff's broker confirmed receipt of the letter and wrote "still no checks." (Dkts. 43-36 at 2; 43-44 ¶ 33; 49-1 ¶ 33.)  On February 6, Plaintiff received two checks from Defendant.  (Dkt. 43-37 at 2.)  On February 8 (but with a date of February 1), Mr. Diego executed the lease previously executed by Defendant, and Plaintiff sent the lease to Defendant's broker.  (Dkts. 43-41; 43-44 ¶¶ 35–36; 49-1 ¶¶ 35–36.)

After Defendant failed to pay rent, Plaintiff sued in state court for breach of contract.  (Dkt. 1-1.)  Defendant removed this case and later moved to dismiss claiming the parties never had an enforceable contract. (Dkts. 1; 4.)  Plaintiff filed an amended complaint changing its allegation

about how the parties entered into an enforceable lease. (Dkt. 5.)
Defendant renewed its motion to dismiss, and the Court denied that
motion. (Dkts. 12; 19.) After discovery, Defendant moved for summary
judgment, arguing again that no enforceable lease existed. (Dkt. 43.)

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court
"shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if
it "might affect the outcome of the suit under the governing law." *W. Grp.
Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual
dispute is genuine "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*,
477 U.S. at 248).

The party moving for summary judgment bears the initial burden
of showing a court, by reference to materials in the record, that there is
no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm
Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has

the burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

Throughout its analysis, the Court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## III.  Discussion

Defendant argues no contract was ever formed and no reasonable jury could conclude otherwise.  (Dkts. 43 at 1; 47 at 18.)  According to Defendant, its execution of the lease was an offer it properly rescinded before Plaintiff executed the contract.  (Dkt. 47 at 18.)  Plaintiff disagrees, claiming the parties entered a valid contract.  (Dkt. 49 at 9–11.)  Plaintiff says it made an offer when it delivered the negotiated lease to Defendant, and Defendant accepted it by signing the lease without any alteration. (*Id.* at 10–11.)  It says Defendant's later attempt to rescind was invalid. (*Id.*)  The issue is whether the parties agreed that only a mutually executed lease would be binding.

To make a binding contract, "[b]oth parties must assent to the same thing."  *Harry Norman & Assoc. v. Bryan*, 282 S.E.2d 208, 210 (Ga. Ct. App. 1981).  Georgia law gives negotiating parties the power to decide how they will demonstrate assent to the terms of a contract.  *See, e.g.*, *Benton v. Gailey*, 779 S.E.2d 749, 752 (Ga. Ct. App. 2015) ("[T]he offer must be accepted in the manner specified by it; . . . if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act.").  Where extrinsic evidence on whether

7

parties mutually assented to all essential terms of a contract exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury. *See Moreno v. Smith*, 788 S.E.2d 349, 352 (Ga. 2016); *Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 450 (Ga. Ct. App. 2013).

In arguing that the parties agreed on mutual execution, Defendant primarily relies on the signed RFP and LOIs that provide they would be "non-binding upon both parties until such time as a [l]ease agreement has been fully executed" and "[n]othing contained herein shall be binding on either party until such time an actual lease agreement is fully executed by all parties." (Dkt. 47 at 20–21.) Defendant argues these documents "conclusively establish[] that [Plaintiff] and [Defendant] intended to be bound only by a mutually executed lease." (*Id.* at 20.)

As support, Defendant asserts *20/20 Vision Center, Inc. v. Hudgens*, 345 S.E.2d 330, 335 (Ga. 1986), controls the outcome in this case. (Dkt. 47 at 19–22.) In *Hudgens*, the parties negotiated terms for a lease of commercial property. 345 S.E.2d at 332. As the parties got close to a final deal, the landlord's agent sent a copy of a draft lease to the tenant's agent. *Id.* The tenant signed the lease and its agent sent it to

the landlord. *Id.* The landlord never signed the lease and a dispute arose about whether a contract existed. *Id.* at 333. The lease contained a clause providing: "The submission of this document for examination does not constitute an offer to lease and this lease becomes effective only upon execution and delivery thereof by Landlord and Tenant." *Id.* at 332. The Supreme Court of Georgia held that, "in view of the clause in the proposed lease agreement between the parties, providing that the lease would become effective 'only upon execution and delivery by Landlord and Tenant,'" a binding, written agreement was never consummated. *Id.* at 335.

While the facts in *Hudgens* are similar to the facts in this case, the Court finds *Hudgens* presents a much simpler question because the lease itself—not a letter of intent—contained the essential clause. Here, the lease is silent on the issue. It does not expressly provide whether the parties intended to be bound by a mutually executed lease. Instead, Defendant relies on the RFP and LOIs which contain similar language to the clause in *Hudgens*, but the location of that language in outside documents presents issues that the Supreme Court of Georgia did not have to address in *Hudgens*.

9

Plaintiff raises two such issues.  First, Plaintiff argues that, under the parol evidence rule, the merger clause in the lease that Defendant executed extinguished the parties' previous discussions and agreements, such as the RFP and LOIs.  (Dkt. 49 at 13–14.)  The parole evidence rule prohibits the admission of evidence of prior or contemporaneous agreements, whose effect is to add to, vary, modify, or contradict the terms of a writing.  *See* 11 Williston on Contracts § 33:1 (4th ed.).  And "[i]t is well established that . . . a merger clause precludes the admission of parol evidence to add to, take from, or vary the written contract."  *Cook v. Reg'l Commc'ns, Inc.*, 539 S.E.2d 171, 173 (Ga. Ct. App. 2000).  But, as the Court explained in its August 22, 2019 Order, parol evidence may be used to show no valid agreement ever went into existence.  (Dkt. 19 at 11 ("In deciding whether parties mutually assented to the terms of a contract, a court may consider the circumstances surrounding making the contract, including the parties' discussions and correspondence." (citing *Frickey v. Jones*, 630 S.E.2d 374, 376 (Ga. 2006)))); *see also Moreno*, 788 S.E.2d at 352 ("[P]arol evidence may be used to show no valid agreement ever went into existence." (quoting *BellSouth Advert. & Publ'g Corp. v. McCollum*, 433 S.E.2d 437, 440 (Ga.

Ct. App. 1993))).  The Court thus rejects Plaintiff's argument that the parties' previous negotiations, discussions, and correspondence "have no bearing" on the issue before the Court.  (Dkt. 49 at 13.)

Second, Plaintiff argues that the clauses pertaining to full execution in the RFP and LOIs restrict how the parties assent to *those* documents but do not apply to the lease and "place[] no restrictions on the [l]ease." (*Id.* at 12, 14, 18.)  The question is what a reasonable person in the position of the parties would understand.  *See Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 297 S.E.2d 733, 737 (Ga. 1982) ("In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an *objective theory of intent* whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." (emphasis added)).  Some of the clauses Defendant relies on do not provide any insight into what the parties' intended by "full execution."  For example, the clause stating that the RFP and LOIs would be "non-binding upon both parties until such time as a [l]ease agreement

11

has been fully executed" does not provide any insight into whether the parties intended "full execution" to mean mutual execution. Two other clauses, however, present a closer call: (1) "This proposal is subject to the execution of a [l]ease agreement by both parties"; and (2) "Nothing contained herein shall be binding on either party until such time an actual lease agreement is fully executed by all parties." (Dkts. 43-44 ¶¶ 6, 8; 49-1 ¶¶ 6, 8.) On the one hand, these clauses associate "full execution" with "both" or "all" parties. But, on the other hand, they begin with specific references to "[t]his proposal" (i.e., the RFP) and "[n]othing contained herein" (i.e., the LOIs), so it is possible the parties intended these clauses to govern those documents *only*, not the lease. For example, with the second clause, perhaps the parties intended that condition A (i.e., the LOI binding the parties) will not be triggered until condition B (i.e., a lease agreement is "fully executed by all parties") happens. In other words, perhaps condition B is required for the LOI to be binding but not required for a lease to be binding. Given these possibilities and that the Court resolves all reasonable doubts about the facts in favor of

Plaintiff as the non-movant, the Court finds that Plaintiff has come forward with facts showing a genuine dispute of material fact.[2]

Beyond the clauses in the RFP and LOIs, Defendant claims there is "additional objective evidence in the record" that confirms the parties intended mutual execution. (Dkt. 47 at 22.) With these secondary arguments, the Court finds Defendant has not met its initial burden of demonstrating there is no genuine dispute of material fact. The Court provides the following three examples. First, Defendant says it told Plaintiff in an email that Plaintiff could not deposit Defendant's check until Plaintiff executed the lease and argues that email "show[s] that both sides intended to be bound by a mutually executed lease." (*Id.* at 23.) But, as Plaintiff correctly notes, the email Defendant is referring to does not support Defendant's alleged fact. (Dkts. 49 at 19; 49-1 ¶ 31.) The email is an internal correspondence between Defendant's broker (Bo Bond) and Defendant's Global Head of Real Estate (Marcie Kapaldo). (Dkts. 43-30 at 2; 43-44 ¶ 31.) Other than that email, Defendant provides no additional evidence showing this information was ever communicated

---

[2] *See Moreno*, 788 S.E.2d at 352 (where extrinsic evidence on mutual assent to a contract exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury).

to Plaintiff.   Second, Defendant argues the parties intended mutual execution because the lease contains blocks for both sides to sign.  (Dkt. 47 at 23.)  But "the mere fact that a contract contains signature blocks does not mean that signature is required to make the contract effective." *Cobra Tactical, Inc. v. Payment All. Int'l Inc.*, 315 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) (citing Georgia cases).   Third, Defendant points to the lease's "counterparts" provision as evidence of mutual execution.  (Dkt. 47 at 24.)  This provision provides:

> This [l]ease may be executed in two or more counterparts, each of which shall constitute an original, but when taken together shall constitute but one [l]ease.  Each counterpart shall be effective if it bears the signatures of all parties hereto; or so many counterparts shall contain all of the signatures of the parties hereto shall constitute one [l]ease, and be effective as such.

(Dkt. 43-39 at 15.)  Plaintiff counters that this provision governs the effectiveness of counterparts and "does not control the means by which the parties can assent to the [l]ease itself."  (Dkt. 49 at 17–18.)  This possibility is enough for Plaintiff's breach of contract claim to survive summary judgment.

And, while Defendant marshals the evidence it champions, other evidence suggests the parties believed they had an enforceable

agreement prior to Defendant's alleged rescission.  As explained above, on February 1, 2018, Plaintiff's broker emailed Defendant's broker, stating "I've just been made aware we've got some other cleaning up to do." (Dkts. 43-29 at 2; 43-44 ¶ 30; 49-1 ¶ 30.)  He explained that the lease agreement had conflicting provisions about who was responsible for the cost of certain work.  (Dkt. 43-29 at 2.)  He recommended the parties "clean it up by a 1st amendment" but wanted to get Defendant's "thoughts" before he drafted that document.  (*Id.*)  Defendant characterizes this email as "proposing modifications to the draft agreement." (Dkt. 47 at 12.)  Plaintiff counters that "[o]ne revises a draft contract under negotiation" while one "*amends* a contract that has already been agreed upon." (Dkt. 49 at 21.)  The email might suggest to a jury that Plaintiff (or at least its broker) thought there was an enforceable agreement in place that day.  That Defendant's broker did not object to the use of an amendment, but rather complained about "form documents," might suggest it had the same understanding.  (Dkt. 43-29 at 2.)  All of this is to say that—contrary to Defendant's argument—there is evidence on both sides of the issue.  This is not a case like *Hudgens* in which a provision of a lease permits the Court to conclude there is no

triable issue of fact as to whether the parties agreed to a binding contract. Just the opposite, this is a case in which the jury must weigh the conflicting evidence and make that determination.

## IV.  Conclusion

The Court **DENIES** Defendant's Motion for Summary Judgment (Dkt. 43).

The Court **ORDERS** this case to mediation.  The parties may retain the mediator to mediate this case.  The expense of a retained mediator must be paid by the parties.  The parties, alternately, may request that the Court appoint a magistrate judge to conduct the mediation.  The parties are not required to pay for mediation by a magistrate judge.

The parties shall advise the Court, on or before February 19, 2021, of their mediation preference.  If they elect to retain their own mediator, the parties shall identify the mediator on or before March 5, 2021.  The parties must have present at the mediation a person with authority to settle this litigation.

The parties shall, within five days after the mediation, notify the Court in writing whether mediation led to a settlement of this action.

16

The Court **STAYS** this case pending mediation.   The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case during the period of stay.

**SO ORDERED** this 5th day of February, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE